FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jul 25, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| TAMMY C.,[1] <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | No. 1:23-cv-3181-EFS <br><br> **ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS** |

Plaintiff Tammy C. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of benefits. Plaintiff claims she is unable to work due to migraines and mental-health symptoms. By failing to fully evaluate all of the psychological opinions, the ALJ erred. This matter is remanded for further proceedings.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

DISPOSITIVE ORDER - 1

I. **Background**

At 41-years-old, Plaintiff applied for benefits under Titles 2 and 16, claiming disability beginning March 13, 2020, based on physical and mental impairments.[2] After the agency denied benefits, ALJ Sue Leise held a telephonic hearing in August 2022, at which Plaintiff and a vocational expert testified.[3]

Plaintiff testified that she makes dinner, does crafts, socializes with her dad daily, lives with her boyfriend and two adult sons, does not shop by herself due to anxiety being around people, and does housework although her ability to do laundry was limited by a recent shoulder surgery.[4] She also testified that since her mom's death (in 2019) it is difficult for her to be around people and she gets severe migraines.[5] Her migraines have been lessened by the injections she started getting in 2021, although she still gets breakthrough migraines with severe spotting in her eyes and nausea, requiring her to seek relief in a dark, cool place and either read a book or watch television.[6] Plaintiff testified that her depression and anxiety make it difficult to get out of bed and be around people.[7] She stated that she probably has

---

[2] AR 271–89.

[3] AR 162–86, 33–54.

[4] AR 42–48.

[5] AR 45.

[6] AR 46–49.

[7] AR 43–44, 48.

"bad" days about 45–50% of the time, but only 25% of the time is she unable to leave the house.[8] As a child, Plaintiff had learning difficulties and attended special education classes.[9] She graduated high school and worked as a cook in a pizza restaurant, sales associate, and stocker.[10]

The ALJ issued a decision denying benefits.[11] The ALJ found Plaintiff's alleged symptoms were not entirely consistent with the medical evidence and other evidence.[12] The ALJ considered the lay statement from Plaintiff's boyfriend.[13] As to the mental-health medical opinions,[14] the ALJ found:

---

[8] AR 43–49.

[9] AR 563.

[10] AR 40–41, 33, 563.

[11] AR 14–32. Per 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[12] AR 22–23. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should consider replacing the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

[13] AR 25.

[14] Plaintiff does not challenge the ALJ's evaluation of the physical-health medical opinions. Therefore, the Court focuses on the ALJ's evaluation of the mental-health opinions.

DISPOSITIVE ORDER - 3

- the reviewing opinions of Bruce Eather, PhD, and Carol Mohney, PhD, persuasive.
- the treating opinion of Bridget Beachy, PsyD; the February 2021 examining opinion of Thomas Genthe, PhD; and the reviewing opinion of David Morgan, PhD, unpersuasive.[15]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since March 13, 2020, the alleged onset date.
- Step two: Plaintiff had the following medically determinable severe impairments: status-post fracture to ankle, bilateral chronic knee pain, migraines, depression, anxiety, post-traumatic stress disorder (PTSD), and status-post right shoulder surgery for subacromial impingement and right shoulder mass.
- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to perform light work except:

  she can lift and or carry 10 [pounds] frequently and 20 pounds occasionally; she can stand and/or walk 6 hours and sit at least 6 hours in an 8 hour workday; she is limited to occasional climbing of ramps and stairs; she is limited to no climbing ladders, ropes, or scaffolds; she is limited to occasional balancing, kneeling, stooping, crouching, and crawling; she is

---

[15] AR 24–25.

       limited to occasional overhead reaching with right upper extremity; she must avoid concentrated exposure to extremes of cold; the work environment should not exceed the moderate noise level (level 3); she is limited to no work around hazards such as unprotected heights and dangerous machinery; she is able to remember, understand, and carry out routine, repetitive tasks or instructions that can be learned within a period of 30 days or by demonstration; she is limited to no public interaction; and she can work in proximity to co-workers but no teamwork.

- Step four: Plaintiff was not able to perform past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as mailing clerk, routing clerk, and router.[16]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[17]

## II.  Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[18] Substantial evidence is "more than a mere scintilla but less than

---

[16] AR 17–27.

[17] AR 1–6.

[18] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ), *superseded on other*

DISPOSITIVE ORDER - 5

a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[19]

### III.   Analysis

Plaintiff argues the ALJ erred in her evaluation of the mental-health medical opinions, Plaintiff's migraines, and Plaintiff's testimony about her mental-health symptoms and limitations. The Commissioner opposes each of these arguments, submitting that the ALJ properly found the challenged medical opinions to be unpersuasive and Plaintiff's symptom reports inconsistent with the medical evidence, her improvement with treatment, her own statements about her capabilities, and her daily activities. Because the ALJ consequentially erred by not

---

*grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[19] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1  fully evaluating the medical opinions, the Court does not reach the remaining
2  arguments.

**A.    Medical Opinions: Plaintiff establishes consequential error.**

Plaintiff argues the ALJ erred when evaluating Dr. Genthe's opinions and the opinions of David Morgan, PhD, and Bridget Beachy, PsyD. The Court agrees the ALJ erred by not fully evaluating Dr. Genthe's opinions and that this error consequentially impacted the ALJ's evaluation of each of the medical opinions.

1.    <u>Standard</u>

An ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings.[20] The ALJ need not however "give any specific evidentiary weight . . . to any medical opinion(s)."[21] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[22]

---

[20] 20 C.F.R. §§ 404.1520c(a), (b), 416.920c(a), (b).

[21] Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

[22] *Id.* §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). When assessing the medical source's relationship with the claimant, the ALJ is to consider the treatment length, frequency, purpose, and extent, and whether an examination was conducted. The ALJ may also consider whether the medical source has familiarity with the other

When evaluating the persuasiveness of each medical opinion, the regulations require the ALJ to *consider and explain* the supportability and consistency of each medical opinion:

> The factors of supportability . . . and consistency . . . are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.[23]

The regulations define these two required factors as follows:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[24]

---

record evidence or an understanding of the disability program's policies and evidentiary requirements. *Id.* §§ 404.1520(c)(5), 416.920(c)(5).

[23] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

[24] *Id.* §§ 404.1520c(c), 416.920c(c)(1)–(2).

DISPOSITIVE ORDER - 8

The ALJ may, but is not required to, explain how the other listed factors were considered.[25] Moreover, an ALJ need not articulate how she considered multiple opinions from one medical source individually, but the ALJ must at least articulate how she considered the supportability and consistency factors for the medical source's opinions.[26]

### 2. Dr. Genthe and Dr. Morgan

Dr. Genthe evaluated Plaintiff twice. First, in February 2021, Dr. Genthe performed a consultative examination of Plaintiff at the request of Disability Determination Services.[27] Dr. Genthe reviewed three medical records and a function report, and performed a diagnostic interview, a mental status examination, and psychological testing. Dr. Genthe diagnosed Plaintiff with major depressive disorder with anxious distress, social anxiety disorder, panic disorder, generalized anxiety disorder, and PTSD. He found that Plaintiff's symptoms were not being managed and were "likely to interfere with her ability to initiate or

---

[25] *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). When two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported . . . and consistent with the record . . . but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. *Id.* §§ 404.1520c(b)(3), 416.920c(b)(3).

[26] *Id.* §§ 404.1520c(b)(1)–(2), 416.920c(b)(1)–(2).

[27] AR 562–68.

maintain future employment" and that her psychological prognosis was poor.[28] Dr. Genthe opined that "she is unlikely to function adequately, and/or consistently in a work setting until her psychological symptoms have been managed more effectively," and:

> [Her] ability to interact appropriately with the public was assessed as poor. Her ability to ask questions and accept instructions was assessed as poor. Her ability to get along with coworkers and/or peers was assessed as poor. Her ability to respond appropriately to criticism from supervisors was assessed as poor. Her ability to adhere to basic standards of neatness and cleanliness was assessed as poor. In consideration of her expressed difficulties dealing with the public, she is likely to function best in settings that would not require her having to deal with a large number of coworkers and/or consumers on an ongoing basis.
>
> Based on general observations and her mental status, [she] is likely able to understand and remember short, simple instructions. She is unlikely able to understand and remember detailed instructions. She is likely able to carry out short, simple instructions in a reasonable amount of time. She is likely unable to carry out detailed or complicated instructions in a reasonable amount of time. She is likely able to maintain attention and concentration for brief periods of time, but unlikely for extended periods of time. She is likely able to perform simple work-like activities at a consistent pace. She is unlikely able to respond appropriately to changes in the work setting.[29]

A few months later in April 2021, Dr. Genthe evaluated Plaintiff again, this time for the State of Washington Department of Social and Health Services.[30] He diagnosed Plaintiff with major depressive disorder with anxious distress, panic

---

[28] AR 567–68.

[29] AR 568.

[30] AR 656–63.

disorder, PTSD, and ADHD, combined presentation. He opined that Plaintiff was moderately limited in her abilities to learn new tasks, perform routine tasks without special supervision, be aware of normal hazards and take appropriate precautions, ask simple questions or request assistance, and perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances without special supervision. He opined that Plaintiff was markedly limited in her abilities to adapt to changes in a routine work setting, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, complete a normal workday and workweek without interruptions from psychologically based symptoms, and understand, remember, and persist in tasks by following detailed instructions. Dr. Genthe again found that Plaintiff's symptoms were not being managed and were likely to interfere with her ability to initiate or maintain future employment and that her prognosis was fair.

Later that month, David Morgan, PhD, reviewed Dr. Genthe's April 2021 opinion, along with a June 2020 treatment note authored by Plaintiff's treating psychologist Dr. Beachy.[31] Dr. Morgan agreed with Dr. Genthe's April 2021 opined limitations.

As to these opinions, the ALJ stated:

> I find the opinions of Thomas Genthe, PhD unpersuasive (Exhibit 7F). His opinion is partially supported by corresponding mental status exam. As noted, the claimant demonstrated some deficits in memory and concentration on exam by Dr. Genthe. Yet, he indicated she is

---

[31] AR 651–54.

able to manage her finances. Dr. Genthe assessed the claimant's social functioning as poor. However, this assessment is inconsistent with mental status exams throughout the relevant period showing the claimant as friendly, cooperative, and completely oriented. Furthermore, she is able to shop in stores. She has maintained a relationship. For similar reasons, I find the opinion of DSHS reviewing consultant David T. Morgan, PhD unpersuasive (Exhibit 14F/1-4). He relied on the evaluation by Dr. Genthe, which the record shows is not completely consistent with the longitudinal record as evidenced by mental status exams primarily showing stable mood and intact cognition.[32]

The ALJ mentions "opinions" of Dr. Genthe, but only cites to Exhibit 7F, which is Dr. Genthe's February 2021 evaluation; the ALJ does not cite to Dr. Genthe's April 2021 opinion.[33] Dr. Genthe summarizes portions of Dr. Genthe's February 2021 evaluation but does not summarize any portion of Dr. Genthe's April 2021 evaluation. When mentioning that Dr. Morgan relied on Dr. Genthe's evaluation, the ALJ did not clarify that Dr. Morgan relied on Dr. Genthe's April 2021 evaluation, not the February 2021 evaluation, which the ALJ had been evaluating.

The Commissioner argues the ALJ reasonably found Dr. Genthe's February 2021 opinion and Dr. Morgan's opinion inconsistent with the medical record and Plaintiff's activities and that any error by the ALJ in not evaluating Dr. Genthe's

---

[32] AR 24–25.

[33] *See* 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1) (providing that an ALJ need not articulate how she considered multiple opinions from one medical source individually but does require that the ALJ at least articulate how she considered these opinions' supportability and consistency in one analysis).

DISPOSITIVE ORDER - 12

April 2021 opinion is harmless because the ALJ articulated why Dr. Morgan's mirrored limitations with Dr. Genthe's April 2021 opinion were unsupported by Dr. Genthe's evaluation and inconsistent with the longitudinal record.

However, the ALJ's analysis—or lack thereof—as to Dr. Genthe's April 2021 opinion fails to satisfy the requirement that the ALJ explain how she "considered the supportability and consistency factors"[34] for Dr. Genthe's opinions. Even if the ALJ's analysis as to Dr. Morgan's opinion could be interpreted as the ALJ finding that both of Dr. Genthe's opinions were inconsistent with the "mental status exams primarily showing stable mood and intact cognition," the ALJ failed to meaningfully articulate whether Dr. Genthe's opinions, as a whole, were or were not supported by explanation and the relevant medical evidence from his evaluations or the records he reviewed.[35] For instance, during his April 2021 evaluation, mere months after his February 2021 evaluation, Dr. Genthe made abnormal findings supportive of his opined limitations, such as that Plaintiff provided excessive amount of detail when responding to questions, that she had a tangential thought process, and that she had moderate difficulties following the conversation.[36] Similar to these April observations and findings, Dr. Genthe in February 2021 found that Plaintiff had a constricted affect and impacted delayed

---

[34] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

[35] AR 25.

[36] AR 661–63.

recall, and Dr. Genthe's record review included a psychological report by Kristi Trickett, DO, indicating that Plaintiff's mood was anxious and agitated.[37] In contrast to these findings by Dr. Genthe and Dr. Trickett, the ALJ held that the "mental status exams [of record] primarily show[ed] stable mood and intact cognition."[38] Yet, in the very next paragraph when discussing Dr. Beachy's treating opinion, the ALJ recognized that Plaintiff "presents with a depressed mood and affect as well as anxiety at times."[39] Without more explanation, the ALJ seems to have cherrypicked the "stable mood" findings from the medical record, many from appointments for her physical conditions, and used them as a basis to discount Dr. Genthe's and Dr. Morgan's mental-health opinions. This error is further impacted by the ALJ not considering whether Dr. Genthe's opinions were

---

[37] AR 562–67; AR 498-99 (Apr. 30, 2019 psychological report by Dr. Trickett noting that Plaintiff was alert, anxious, agitated, and flat with normal thought content, ability to perform basic computations and apply abstract reasoning, and normal attention span and concentration).

[38] AR 25.

[39] AR 25. *See also* AR 468, 470, 477, 540, 552, 556, 558, 628, 631, 634–35, 642, 740–45, 747–49, 756–57 (observing that Plaintiff often appeared at monthly psychological sessions with Dr. Beach as depressed, anxious, and/or with negative thinking patterns).

consistent with the objective medical evidence authored by Dr. Beachy over her two years of treating Plaintiff's mental health.

The Commissioner highlights that the ALJ did consider that Dr. Genthe's February 2021 opinion and Dr. Morgan's opinion were inconsistent with Plaintiff's ability to shop in stores and maintain a relationship.[40] But by failing to recognize that Plaintiff shops in stores with the emotional support of her adult son or her boyfriend, the ALJ failed to fairly consider that Plaintiff's social limitations pertain to her anxiety being around other people in large settings. Therefore, the fact that she is able to go to the store with her son or boyfriend, or that she has a boyfriend, is not inconsistent with Dr. Genthe's opinions (or Dr. Morgan's or Dr. Beachy's opinions) that Plaintiff's anxiety-related symptoms would interfere with her ability to work, including communicating and performing effectively in a work setting, maintaining appropriate behavior in a work setting, and completing a normal workday and workweek.

In summary, the ALJ's failure to evaluate fairly and fully both of Dr. Genthe's opinions consequentially impacted the ALJ's evaluation of the mental-health opinions.

3. <u>Dr. Beachy</u>

Plaintiff first met with Dr. Beachy in April 2019 but did not begin monthly psychological treatment sessions until February 2020, with the last treatment of

---

[40] AR 24.

record in July 2022.[41] During the majority of the monthly treatment sessions, Dr. Beachy noted that Plaintiff generally appeared with a depressed mood and anxiety and at times with a defeatist or frustrated outlook.[42] In August 2022, Dr. Beachy completed a Mental Source Statement.[43] Dr. Beachy opined that Plaintiff was:

- Moderately limited in her abilities to remember locations and work-like procedures, interact appropriately with the general public; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and respond appropriately to changes in the work setting.
- Markedly limited in her abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from

---

[41] *See, e.g.*, AR 468, 470, 475, 477, 501, 505, 540, 547–49, 552, 556–58, 632, 634–35, 740–45, 747–49.

[42] *See, e.g.*, AR 477 (Feb. 2020: "depressed mood, congruent affect, engaged in bhc visit"); AR 470 (March 2020: same); AR 469 (Apr. 2020: same); AR 558 (June 2020: same along with "negative thinking patterns").

[43] AR 762–64.

      supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others.

- Severely limited in her abilities to perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods.

Dr. Beachy noted that Plaintiff would have marked difficulties interacting with others, adapting or managing herself, and maintaining concentration, persistence or pace. She opined that Plaintiff would be off-task over 30% of the workweek and would miss 4 or more days per month. She wrote that Plaintiff "deals with high anxiety levels. Has been for years. Very hard for her to execute regular work demands due to mental health."[44]

      The ALJ found Dr. Beachy's opinion unsupported by the medical evidence, stating:

> While the claimant presents with a depressed mood and affect as well as anxiety at times, she is frequently described as friendly, cooperative, and completely orientated. . . . [Plaintiff] primarily displays intact cognitive functioning on mental status exams

---

[44] AR 765.

> throughout the period at issue. She has remained independent in daily activities and is able to complete them within a reasonable amount of time. While the records support some cognitive and social limitations, I fully account for these factors in the residual functional capacity.[45]

The ALJ's evaluation focused on Plaintiff's cognitive functioning and her ability to perform daily activities. However, Plaintiff alleges that her anxiety pertains to being in public and around others and that it impacts her ability to focus, concentrate, and persist on work duties, but does not impact her orientation or her cognitive functioning during mental status examinations at treatment appointments or consultative examinations. Plaintiff also highlights that her daily living activities, which were relied on by the ALJ, are not activities that are negatively impacted by her anxiety.

Because this matter is being remanded due to the ALJ's failure to adequately articulate the supportability and consistency factors as to Dr. Genthe's opinions, on remand, the ALJ is to also reevaluate Dr. Beachy's opinion. If the ALJ relies on the same rationale, the ALJ must meaningfully explain why Plaintiff's cognitive functioning on mental status examinations and her ability to perform daily activities is inconsistent with Dr. Beachy's opined limitations pertaining to Plaintiff's ability to interact with others and attend and persist at work. Of note, neither Dr. Eather nor Dr. Mohney, who issued the two reviewing opinions that the

---

[45] AR 25.

ALJ found persuasive, reviewed Dr. Beachy's opinion.[46] Nor does it appear from the Disability Determination Explanation at the reconsideration level that Dr. Mohney reviewed Dr. Genthe's second April 2021 opinion.[47]

    4. <u>Summary</u>

The ALJ's failure to evaluate fairly and fully Dr. Genthe's opinions consequentially impacted the ALJ's evaluation of the mental-health opinions from each of the medical sources.

**B.**    **Symptom Reports: The ALJ is to reconsider on remand.**

Plaintiff argues the ALJ failed to consider the impact that Plaintiff's migraines and her mental health have on her functioning. Because the ALJ erred when evaluating the medical opinions, the ALJ is to reevaluate Plaintiff's symptom reports, including her migraine symptoms,[48] on remand.

---

[46] *See* AR 105–130 (making no mention of Dr. Beachy's opinion).

[47] Dr. Eather understandably did not review Dr. Genthe's April 2021 opinion nor Dr. Beachy's opinion because such were authored after he reviewed the record on February 18, 2021. However, neither Dr. Genthe's April 2021 opinion nor Dr. Beachy's opinion appear to be part of the record that Dr. Mohney reviewed on reconsideration even though both predated her review. *See* AR 105–130.

[48] If the ALJ again finds that Plaintiff's migraines improved with treatment to an extent that allows her to work fulltime, the ALJ is to consider the timing of such improvement.

## IV.     Conclusion

Plaintiff establishes the ALJ erred. Remand for further proceedings as requested by Plaintiff is appropriate. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED**:

1. The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2. The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 11**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 25th day of July 2024.

EDWARD F. SHEA
Senior United States District Judge